UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
PHIMPHORN FRAZER,

                                        Plaintiff,

                                                                              **OPINION AND ORDER**

            - against -
                                                                                No. 11-CV-9699 (CS)

ITW FOOD EQUIPMENT GROUP LLC,

                                        Defendant.
-------------------------------------------------------------------------x

Appearances:

Thomas Francis Kelly, III
Kelly & Meenagh
Poughkeepsie, New York
*Counsel for Plaintiff*

Elizabeth Blackwell Wright
Thompson Hine LLP
Cleveland, Ohio
*Counsel for Defendants*

Seibel, J.

        Before the Court are Defendant's Motion *In Limine* to Exclude the Testimony and

Opinion of Leslie Wilder, (Doc. 27), and Defendant's Motion for Summary Judgment, (Doc. 22).

For the following reasons, both Motions are GRANTED.

## I.   Background

        The following facts are based on the parties' Local Civil Rule 56.1 statements and

supporting materials, and are undisputed except where noted.

        This case arises from a kitchen accident at Vassar Brothers Hospital ("the Hospital").  On

December 15, 2008, Plaintiff Phimphorn Frazer, a bakery worker with twenty years of

experience, was using a commercial mixer to make carrot cake batter.  (D's 56.1 ¶ 10; P's Reply

                                        1

56.1 ¶ 10.)[1]  After mixing several ingredients together, Plaintiff turned the mixer off and, before

the wire whip agitator stopped moving completely, used her hands to brush some flour from the

bowl's rim into the mixing bowl.  (D's 56.1 ¶ 11; P's Reply 56.1 ¶ 11.)  Plaintiff's hand came

into contact with the wire whip, severely injuring her middle finger.  (D's 56.1 ¶ 11; P's Reply

56.1 ¶ 11; Frazer Dep. 78.)[2]  She immediately went to the hospital, and one month later, the

doctors amputated her finger.  (Frazer Dep. 84-89.)  Plaintiff was unable to work after the

accident, but has since returned to her job.  (*Id*. at 89.)  Plaintiff continues to use the mixer in the

same condition as it was when she was injured.  (D's 56.1 ¶ 15; P's Reply 56.1 ¶ 15.)

Defendant ITW Food Equipment Group LLC ("ITW")[3] manufactured and sold the mixer

to the Hospital in 1988 or 1989.[4]  (D's 56.1 ¶ 1; P's Reply 56.1 ¶ 1.)  The mixer is a Hobart

model A200 commercial mixer.  (D's 56.1 ¶ 2; P's Reply 56.1 ¶ 2.)  When in use, the mixing

bowl is raised so that the agitator is down inside the bowl while rotating and the bowl surrounds

the agitator.  (D's 56.1 ¶ 7; P's Reply 56.1 ¶ 7.)  Once the mixer is turned off, there is a short

period of time – the "wind-down" period – before the agitator comes to a complete stop.  (D's

56.1 ¶ 8; P's Reply 56.1 ¶ 8.)  Underwriter's Laboratories, Inc. ("UL") and the National

---

[1] "D's 56.1" refers to Defendant ITW Food Equipment Group LLC's Local Civil Rule 56.1 Statements of Material Facts.  (Doc. 23.)  "P's Reply 56.1" refers to Plaintiff's Response to Defendant's Local Civil Rule 56.1 Statements of Material Facts.  (Doc. 35.)

[2] "Frazer Dep." refers to the Deposition of Phimphorn Frazer.  (Doc. 26 Ex. B.)

[3] Plaintiff originally filed her Complaint against Hobart Corporation.  Per stipulation, the parties agreed to substitute ITW for Hobart as the correct Defendant.  (Doc. 5.)

[4] The Hospital purchased two Hobart model A200 mixers from ITW, one in 1988 and one in 1989.  There is some confusion over which machine Plaintiff was using during the incident, but there are no significant differences between the two machines.  Defendant refers to both mixers as "the mixer," (*see* Memorandum in Support of Defendant ITW Food Equipment Group LLC's Motion for Summary Judgment ("D's Mem."), (Doc. 26), 2), and Plaintiff does not object.  I will do the same for purposes of this opinion.

Sanitation Foundation ("NSF"), two standard-setting entities in the commercial food equipment industry, certified the mixer as compliant with industry standards. (D's 56.1 ¶ 3).[5]

Plaintiff admits that she was familiar with how to operate the mixer. (Frazer Dep. 30.) She knew not to put her hand near the mixing bowl until the mixer had stopped running, and that she could be injured if she did. (D's 56.1 ¶ 12; P's Reply 56.1 ¶ 12.) She also knew that the mixer, once turned off, would take a short period of time to completely stop or "wind-down," and that she should not put her hand in the mixer until the mixer had completely stopped. (D's 56.1 ¶ 14; P's Reply 56.1 ¶ 14.) Plaintiff's co-workers testified that they did not need a warning to advise them of the "open and obvious danger" of putting one's hand into a running mixer. (D's 56.1 ¶ 13; P's Reply 56.1 ¶ 13; Roe Dep. 8-9; Hayles Dep. 10.)[6]

On September 27, 2011, Plaintiff commenced this action by filing a Complaint in state court in Dutchess County, New York. Defendant removed the case to federal court on December 30, 2011. (Doc. 1.) Plaintiff originally sought recovery from Defendant on the theories of strict product liability, negligence and breach of warranties, but has since abandoned the latter two claims. (Wilder Dep. 32.)[7] Plaintiff alleges that Defendant is strictly liable for design defect and failure to warn.

---

[5] Plaintiff disputes this fact on the ground that entities in the commercial food industry, such as the UL, require the placement of guards at the point of operation. (*See* P's Reply 56.1 ¶ 3.) I may disregard the objection, however, because Plaintiff provides no citation to record evidence in support of it. *See* Fed. R. Civ. P. 56; Local Civil Rule 56.1(d); *see also Giannullo v. City of N.Y.*, 322 F.3d 139, 142 (2d Cir. 2003) (unsupported facts in moving party's Local Rule 56.1 statement disregarded); *A.B. v. Staropoli*, 929 F. Supp. 2d 266, 278 n.20 (S.D.N.Y. 2013) (same). In any event, the UL and Occupational Safety and Health Administration ("OSHA") standards that Plaintiff cites elsewhere in her papers are of general applicability and do not relate to mixers specifically, let alone to the Hobart A200. Moreover, Plaintiff's expert acknowledged that the mixer was UL-certified. (*See* Expert Report of Leslie Wilder ("Wilder Rep."), (D's Mem. Ex. C), 8.) Plaintiff suggests that the UL listing is incorrect because "Hobart apparently did not alert UL" to reports of user injuries, (*id.*), but cites to no such reports or when they occurred. Such speculation, or mere disagreement with UL, does not create a genuine dispute of material fact.

[6] "Roe Dep." refers to the Deposition of Douglas Roe. (D's Mem. Ex. H.) "Hayles Dep." refers to the Deposition of Keisha-Gaye Hayles. (D's Mem. Ex. I.)

[7] "Wilder Dep." refers to the Deposition of Leslie Wilder. (D's Mem. Ex. D.)

Plaintiff's expert engineer, Leslie Wilder, prepared an expert report and gave deposition testimony in this case. Mr. Wilder acknowledged that Plaintiff "misuse[d]" the mixer when she placed her hand inside the mixing bowl. (Wilder Rep. 8.) He nonetheless concluded that the mixer was defectively designed because it was not equipped with an interlock bowl guard when it was manufactured in 1988 or 1989, (D's 56.1 ¶ 16; Wilder Dep. 136-38),[8] and that the design defect was a proximate cause of Plaintiff's injury, (P's Reply 56.1 ¶ 20; Wilder Rep. 2, 9). He further concluded that it would have been feasible to add a guard to the mixer in 1988 or 1989 because the technology necessary to create the guard had existed for many years, and because Defendant added the guard in 1994. (P's Reply 56.1 ¶ 18; Wilder Rep. 9.)

## II.     Discussion

### A.     Motion *In Limine* to Exclude Expert Testimony

Defendant moves *in limine* to exclude the testimony and opinions of Plaintiff's expert Mr. Wilder, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Defendant first argues that Mr. Wilder is unqualified to offer an expert opinion on the commercial mixer at issue. (D's MIL 3-4.)[9] Defendant also argues that Mr. Wilder's opinions that the mixer was defectively designed and that an alternative design was feasible suffer from a lack of methodology and are therefore unreliable. (*Id.* at 2-6.)

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. The Rule provides:

---

[8] Plaintiff disputes this characterization of her expert's opinion on the ground that Mr. Wilder also stated that "a patent for a guard existed as early as 1975, [and] that the absence of a guard violated OSHA and UL standards[] and good engineering practice." (*See* P's Reply 56.1 ¶ 16.) This response does not conflict with Defendant's statement but instead adds the grounds for Mr. Wilder's opinion. In any event, Plaintiff separately admits that the "sole basis for [Mr. Wilder's] opinion [that the mixer was defective for lack of an interlock bowl guard] is that ITW FEG designed and patented such a guard in 1994, five or six years later." (*See id.* ¶ 17.) I find no dispute concerning Mr. Wilder's opinion that the mixer was defective without a guard.

[9] "D's MIL" refers to Defendant's Memorandum in Support of Defendant ITW Food Equipment Group LLC's Motion *In Limine* to Exclude the Testimony and Opinions of Leslie Wilder. (Doc. 29.)

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The proponent of the expert testimony bears the burden of establishing the admissibility of such testimony by a preponderance of the evidence.  *Hollman v. Taser Int'l, Inc.*, 928 F. Supp. 2d 657, 666 (E.D.N.Y. 2013) (citing *Daubert*, 509 U.S. at 592 n.10).  The district court serves as the "ultimate gatekeeper," *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (internal quotation marks omitted), and must ensure that all expert testimony is "not only relevant, but reliable," *Daubert*, 509 U.S. at 589; *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  Under Rule 702, the court must determine: "(1) whether the witness is qualified to be an expert; (2) whether the opinion is based upon reliable data and methodology; and (3) whether the expert's testimony on a particular issue will assist the trier of fact." *Hollman*, 928 F. Supp. 2d at 667.[10]

Defendant first challenges Mr. Wilder's qualifications to offer an expert opinion because he lacks experience in the commercial food equipment industry.  (D's MIL 3-4.)  A court must ensure that the expert will be proffering opinions on issues or subject matters that are within his or her area of expertise.  *See Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997).  In assessing expert qualifications, however, "[l]iberality and flexibility . . . should be the rule; the proposed expert should not be required to satisfy an overly narrow test of his own

---

[10] Although courts often hold pretrial evidentiary hearings to determine whether a party's proffered expert testimony is admissible under *Daubert*, "nothing in *Daubert*, or any other Supreme Court or Second Circuit case, mandates that the [court] hold a *Daubert* hearing before ruling on the admissibility of expert testimony, even when such ruling is dispositive of a summary judgment motion." *Berk v. St. Vincent's Hosp. & Med. Ctr.,* 380 F. Supp. 2d 334, 351 (S.D.N.Y. 2005) (alteration and internal quotation marks omitted).  The decision to hold a hearing is left to the sound discretion of the district court. *See id.*  Neither party has requested a *Daubert* hearing.  I have reviewed the depositions and expert reports and conclude that a *Daubert* hearing is unnecessary to resolve the instant Motion. *See Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 71 (S.D.N.Y. 2001).

qualifications." *Lappe v. Am. Honda Motor Co.*, 857 F. Supp. 222, 227 (N.D.N.Y. 1994), *aff'd*

*sub nom. Lappe v. Honda Motor Co.*, 101 F.3d 682 (2d Cir. 1996).  Mr. Wilder holds a

Bachelor's degree and two Master's degrees in engineering, and is a licensed engineer in several

states.  (P's Opp. Ex. E, at 1.)[11]  His resume reflects that he is knowledgeable in various types of

machines, and has expertise in "[s]afety" and "product design."  (*Id.*)  Although Mr. Wilder

never designed or manufactured a commercial mixer, (D's MIL 3), he has sufficient engineering

experience to offer opinions on the commercial mixer at issue here, *see, e.g.*, *Lappe*, 857 F.

Supp. at 227 (expert qualified to testify on automobile design even though he did not design

automobiles).  I therefore find Mr. Wilder qualified to offer his opinions in this case.

Defendant next challenges the methodology and reliability of Mr. Wilder's opinions that

the mixer was defectively designed and that a feasible alternative design existed when the mixer

was manufactured in 1988 or 1989.  (D's MIL 2-6.)  In determining whether an expert opinion

has the "required indicia of scientific reliability," a court may consider "whether a theory or

technique had been and could be tested, whether it had been subjected to peer review, what its

error rate was, and whether scientific standards existed to govern the theory or technique's

application or operation." *Nimely v. City of N.Y.*, 414 F.3d 381, 396 (2d Cir. 2005) (citing

*Daubert*, 509 U.S. at 593-94).  Rule 702 also requires "a sufficiently rigorous analytical

connection between that methodology and the expert's conclusions." *Id.*  "[W]hen an expert

opinion is based on data, a methodology, or studies that are simply inadequate to support the

conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion

testimony." *Id.* at 396-97 (internal quotation marks omitted).

---

[11] "P's Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary
Judgment and Motion *In Limine*.  (Doc. 31.)

Mr. Wilder first opines that the commercial mixer was defective because it lacked an interlocked guard over the mixing bowl.  (Wilder Rep. 4-6.)  Defendant argues that this opinion is lacking in methodology because Mr. Wilder's only basis for the opinion was that Defendant added a guard to the mixer in 1994.  (D's MIL 4-6.)  Plaintiff responds that Mr. Wilder also relied on OSHA regulations and UL standards outlining the need for guards to make certain products safe.  (P's Opp. 9-10.)  Plaintiff's argument may be disregarded because it conflicts with her admission that the only basis for Mr. Wilder's opinion was the 1994 addition of the guard.  (*See* P's Reply 56.1 ¶ 17.)  Further, the argument is without merit.  The applicability of industry standards "may provide some evidence of . . . a defect," *Rupolo v. Oshkosh Truck Corp.*, 749 F. Supp. 2d 31, 43 (E.D.N.Y. 2010), and an expert could reasonably rely on these standards as part of his analysis.  But the regulations cited by Mr. Wilder do not support his conclusion that the mixer was defectively designed.  The OSHA regulations are generalities regarding the desirability of employers guarding machines; they do not relate to mixers, (*see* Wilder Rep. 5-6), and do not apply to manufacturers, *see Byrne v. Liquid Asphalt Sys., Inc.*, 238 F. Supp. 2d 491, 492 (E.D.N.Y. 2002) ("OSHA standards were not intended to impose duties upon manufacturers and have no application against manufacturers of products.").  UL standard 763 is similarly generic, (*see* Wilder Rep. 6), whereas the regulations specific to mixers do not require guarding, as evidenced by UL's approval of the mixer at issue here, (*see* Schlieper Rep. 5).[12]  Mr. Wilder also fails to address how a guard might affect the manufacturer's ability to comply with the NSF requirement that a machine be easily cleaned, (*see* Schlieper Rep. 5), which is obviously implicated for a food mixer, and fails to provide any analysis that addresses the mixer's risk versus utility – an analysis that the finder of fact must make under New York law, *see Humphrey v. Diamant Boart, Inc.*, 556 F. Supp. 2d 167, 172 (E.D.N.Y. 2008).  Quite

---

[12] "Schlieper Rep." refers to the Expert Report of William Schlieper.  (D's Mem. Ex. A.)

simply, it can hardly be said that Mr. Wilder's analysis employed a methodology – his approach

is not testable, was not peer-reviewed, and lacks standards – but to whatever extent it did, that

methodology is flawed and unreliable.  His opinion as to the mixer's defective design is

inadmissible under *Daubert.*

Defendant also challenges the methodology of Mr. Wilder's opinion that it would have

been feasible to add a guard to the mixer in 1988 or 1989.  (D's MIL 4-6.)  Plaintiff responds that

Mr. Wilder based his conclusion regarding feasibility on (1) a patent awarded in 1975 for a guard

grill that when raised shut the machine down; (2) Defendant's own patent, filed in 1993 and

approved in 1994, for a mixer with a guard; and (3) a number of "long standing patents which

implement protective guards for commercial mixers."  (P's Opp. 10-12.)  None of these bases

reflect a reliable methodology.  First, that one product may feasibly be guarded does not mean

that another can.  Second, that a feature can be patented is a far cry from establishing that it can

feasibly, efficiently and profitably be manufactured by a commercial entity.  *See McCarthy v.*

*Handel*, 746 N.Y.S.2d 209, 214 (App. Div. 2002) (affirming decision to exclude evidence of two

patents pre-dating machine in question because plaintiff failed to show that patented designs

were feasible).[13]  Indeed, Mr. Wilder knew of no other manufacturer that produced a product

with such a guard at the relevant time.  (*See* Wilder Dep. 69.)  Third, Mr. Wilder's feasibility

conclusion is based on his estimate that a guard would cost $100 to manufacture, but – aside

from not accounting for research and development costs, (*see id.* at 70-71) – that figure is a

methodology-free guesstimate, (*see id.* at 71).  Fourth, in the absence of discussion regarding

---

[13] I find *Wilson v. Hobart Corp.*, No. 95-CV-2279, 1996 WL 117502 (E.D. La. Mar. 15, 1996), a case cited by
Plaintiff, (*see* P's Opp. 14), inapposite.  In *Wilson*, the court rejected a defendant's attempt to exclude evidence
related to designs of mixers that were not in existence at the time.  *Id.* at *1.  The court, applying Louisiana law, held
that an alternative design just had to be "conceived" – but not necessarily feasible – in order to be admissible.  *Id.*
But the law in New York is different, and plainly requires that an alternative design be feasible.  *See Humphrey*, 556
F. Supp. 2d at 172.

engineering techniques and manufacturing capabilities at the relevant time, it is speculative to

conclude that Defendant could have produced its mixer with a guard in 1988 or 1989 just

because it did so in 1994. *See McCarthy*, 746 N.Y.S.2d at 214 (affirming decision to exclude

evidence of post-manufacture, pre-accident design changes when changes were not feasible at

time of accident). Mr. Wilder provides no foundational facts or methodology (not to mention

testing or standards) for his conclusion that an interlock guard would have been feasible. I

therefore must exercise my gatekeeping function and preclude Mr. Wilder's expert testimony.

B.     Summary Judgment

1.     Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit

under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be

counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The movant

bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if

satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every

element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex

Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The mere existence of a scintilla of evidence in

support of the [non-movant's] position will be insufficient; there must be evidence on which the

jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the

non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1).  Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008).  In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

        2.     Design Defect

Defendant first moves for summary judgment on Plaintiff's design defect claim.  (D's Mem. 4-10.)  On a claim of defective design under New York law, a plaintiff must show:  "(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing the plaintiff's injury." *Clarke v. LR Sys.*, 219 F. Supp. 2d 323, 300 (E.D.N.Y. 2002) (citing *Voss v.*

*Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107 (1983)).  Defendant argues that without Mr.

Wilder's expert testimony, Plaintiff's claim must fail as a matter of law.  (D's Mem. 4.)  A party

cannot survive summary judgment on a design defect claim without admissible expert testimony.

*See Kass v. W. Bend Co.*, 158 F. App'x 352, 353 (2d Cir. 2005) (affirming district court's grant

of summary judgment after court excluded plaintiff's proffered expert testimony in full); *Cuntan*

*v. Hitachi KOKI USA, Ltd.*, No. 06-CV-3898, 2009 WL 3334364, at *6 (E.D.N.Y. Oct. 15, 2009)

(collecting cases).  Plaintiff's only expert is Mr. Wilder.  I therefore agree with Defendant that

summary judgment is appropriate on Plaintiff's design defect claim.[14]

     3.     Failure to Warn

     Defendant also moves for summary judgment on Plaintiff's failure to warn claim.  (D's

Mem. 11-12.)  The exclusion of Mr. Wilder's testimony has no effect on this claim because Mr.

Wilder did not offer any opinions on Defendant's alleged failure to warn.  (*See* P's Opp. 15.)

Under New York law, a failure to warn claimant must demonstrate that (1) a manufacturer has a

duty to warn; (2) against dangers resulting from foreseeable uses about which it knew or should

have known; and (3) that failure to do so was the proximate cause of the harm.  *In re Fosamax*

*Prods. Liab. Litig.*, 924 F. Supp. 2d 477, 486 (S.D.N.Y. 2013).  "New York recognizes two

exceptions to a failure to warn claim:  (1) where the injured party was fully aware of the hazard

through general knowledge, observation or common sense, *i.e.*, [s]he was a knowledgeable user,

---

[14] Even if I had not excluded Mr. Wilder's testimony, Plaintiff would still fail to raise a genuine issue of material fact on her design defect claim.  Defendant submitted proof from its expert, William Schlieper, that the mixer was reasonably safe for its intended purpose, and that a bowl guard was not feasible in 1988 or 1989. (Schlieper Rep. 5-8.)  That Defendant knew at some unstated time that some people were injured using the mixer, and that Defendant later produced a mixer with a guard are insufficient to raise a genuine issue of material fact that the machine was defectively designed.  *See Stalker v. Goodyear Tire & Rubber Co.*, 874 N.Y.S.2d 632, 635 (App. Div. 2009) ("A factual issue regarding design defect is not established by merely pointing to efforts within the industry to make a safer product, without providing some detail as to how the current product is not reasonably safe . . . .").  It is also unclear that adding a guard would have prevented Plaintiff's injury.  The "feasible alternative" must have "prevented the accident."  *Rypkema v. Time Mfg. Co.*, 263 F. Supp. 2d 687, 692 (S.D.N.Y. 2003).  Plaintiff has not established that a guard would have stopped Plaintiff from reaching into the bowl during the "wind-down" period. (*See* Wilder Dep. 90-92.)

and (2) where the risks are open and obvious." *Santoro v. Donnelly*, 340 F. Supp. 2d 464, 486

(S.D.N.Y. 2004) (footnotes and internal quotation marks omitted).  Defendant asserts that both

exceptions apply in the instant case.

Defendant first argues that Plaintiff was aware of the risk of injury of placing her fingers

in the mixing bowl.  (D's Mem. 11-12.)  A manufacturer need not provide warnings to a user

who is aware of the hazards that exist when using a certain product.  *See Hall v. Husky Farm*

*Equip., Ltd.*, 939 N.Y.S.2d 604, 608 (App. Div. 2012) (collecting cases); *see also Stewart v.*

*Honeywell Int'l Inc.*, 884 N.Y.S.2d 743, 744 (App. Div. 2009) (dismissing all claims predicated

on manufacturer's failure to warn where plaintiff had experience using machine that caused

injury and was aware of risk of injury).  Plaintiff admits that she knew she might injure her

fingers if she placed them in the bowl before the agitator stopped.  (P's Reply 56.1 ¶ 12; Frazer

Dep. 31.)  She had used the mixer since 1991, was familiar with the mixer's "wind-down"

period, and had been trained not to put her fingers in the bowl.  (P's Reply 56.1 ¶ 14; Frazer Dep.

30.)  Plaintiff argues, however, that she was unaware of the extent of the injuries that she might

suffer.  (P's Opp. 17.)  In other words, she knew that she might be injured but never considered

the possibility of amputation.  I find this distinction unpersuasive.  Plaintiff's knowledge that her

fingers might be injured is enough; it is irrelevant that she may not have given thought to the

precise extent of these injuries.  *See Clarke*, 219 F. Supp. 2d at 329 (finding distinction between

plaintiff's knowledge of danger that could occur and "particular danger" that occurred

"irrelevant").  Summary judgment is thus appropriate on Plaintiff's failure to warn claim.

Defendant also argues that the risk of injury was open and obvious.[15]  (D's Mem. 11-12.)

Whether a risk is open and obvious is often a jury question, but a court may decide the question

---

[15] Having found that Plaintiff was aware of the risk, I could bypass the question of whether the risk was open and obvious.  *See Clarke*, 219 F. Supp. 2d at 330.  I address it in an abundance of caution.

as a matter of law when only one conclusion may be drawn from the facts. *See Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 541 (S.D.N.Y. 2003). Such is the case here. Moving wire whips plainly can seriously damage one's fingers. Plaintiff admits that that risk of injury was "open and obvious," (D's 56.1 ¶ 13; P's Reply 56.1 ¶ 13), and that everyone, including herself, knew "not to put their hands in the mixer when it's running," (Frazer Dep. 36, 70). A warning would have added little, if anything, to Plaintiff's appreciation of the danger. *See, e.g.*, *Fisher v. Flanigan*, 932 N.Y.S.2d 272, 273-74 (App. Div. 2011) (risk of falling while walking around in moving vehicle was open and obvious; warning would have added nothing). I therefore find that the risk of injury was open and obvious.

Plaintiff argues that the risk was not open and obvious because Defendant chose to place a warning on the machine with respect to its meat grinder, which is on the other end of the machine from the mixer.[16] (P's Opp. 16.) According to Plaintiff, Defendant's decision to warn about the risks associated with the meat grinder reflects Defendant's recognition that the grinder presents a latent danger, and that the same must be true for the mixer. I disagree. Just because Defendant warned about one risk, it does not follow that Defendant must warn about all conceivable risks. Such a rule would produce a warning overload, which "trivializes and undermines the entire purpose of the rule, drowning out cautions against latent dangers of which a user might not otherwise be aware." *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 242 (1988). Further, the warning cautions against putting one's hands into the feed opening or chopper and says to instead using the feed stomper. (P's Opp. Ex. B.) These warnings relate to a feeder apparently used only with the meat grinder; there is no indication that use of the mixer involves a feeder, chopper or stomper. That Defendant recognized a need to warn about those devices thus

---

[16] The machine's many uses include mixing ingredients, slicing vegetables and grinding meat. (Schlieper Rep. 2.)

does nothing to suggest that the mixer presented a latent danger.  Plaintiff has failed to establish that Defendant had a duty to warn, and summary judgment is appropriate on the failure to warn claim.

## III.    Conclusion

For the reasons stated above, Defendant's Motion *In Limine* to Exclude the Testimony and Opinion of Leslie Wilder and Defendant's Motion for Summary Judgment are GRANTED. The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 22, 27), and close the case.

**SO ORDERED.**

Dated:  November 22, 2013
         White Plains, New York


_____
        CATHY SEIBEL, U.S.D.J.

14